Case number 22-5104 et al. Ascendium Education Solutions, Inc. v. Miguel A. Cardona in his official capacity as Secretary of the Department of Education and Department of Education Appellants. Mr. Hazel for the appellants. Mr. St. John for the appellate. Good morning, Mr. Hazel. We will hear from you. Good morning. May it please the Court, Stephen Hazel for the government. If I may, I'd like to reserve three minutes for rebuttal. The Higher Education Act prevents borrowers who create no meaningful costs from receiving collection charges that amount to thousands of dollars. When a borrower refuses to cooperate and thus requires coercive and costly activities, collection charges are authorized. But when a borrower cooperates quickly, there's no need for those activities and no basis for collection charges. The agency has interpreted the statute this way for decades. The Seventh Circuit has approved that interpretation, and the same result is warranted here. The basic flaw in Ascendium's argument is that it assumes that all costs associated with defaulting borrowers are collection costs. That's not consistent with the statute's text, its structure, and with its funding mechanism. Can I ask you a question about that? Because it seems to me that you have framed your arguments based on this distinction between collection costs and administrative costs. Isn't it easier and more, I guess, intuitive to look at this as permissible under the Secretary's prerogative to define reasonable collection costs and hold that the section about the 16% cap needs to be read in conjunction with the section that talks about reasonable collection costs? And therefore, I guess it's Section 20 U.S.C. Section 1078-6. It says, the guarantee agency may, in order to defray collection costs, charge the borrowing amount not to exceed 16% of the outstanding principal and interest at the time of the loan sale. Why can't we just read that as something that needs to be reasonable? That just seems to be the more logical way to look at the way the Secretary exercised his discretion in this case, because the Secretary is still also bound by 20 U.S.C. Section 1091A, which says a borrower who has defaulted on a loan made under the subchapter shall be required to pay, in addition to other charges specified in the subchapter, reasonable collection costs. These are not in conflict with each other, because a borrower in a rehabilitation plan is also a defaulted borrower, so the reasonable collection costs are not in conflict with each other. So it seems to me that looking at it this way seems to be a stronger argument for you than trying to distinguish between collection costs and administrative costs, because that requires you to argue that there are no collection costs in the first 60 days, and that's not clear. Your Honor, let me take that question in two parts. So first, on the relationship between those two provisions, I think it's absolutely right that those are closely related. That reasonable collection cost provision says that when there are those costs, a guarantor can collect them, including against borrowers who enter rehabilitation agreements. The second provision, that rehabilitation cap provision, says when those costs are assessed, they can't go above a 16 percent cap, and we know that because, among other reasons, there is that in order to defray collection cost language. So Congress is very clearly linking these two provisions. So I think that's absolutely right. On your broader point, Your Honor, about sort of how to use the word reasonable here, you know, the agency's interpretation going back three decades now has been that there just are no collection costs in this period, and I'm happy to say more about why that's the best interpretation. No, I understand that, but my question is why do you need to rely on that when you can just rely on the fact that even under Section 1078-6, those have to be it's not reasonable to collect them in the first 60 days. Your Honor, again, the agency's interpretation is that there are just no collection costs, certainly at a minimum, because the word reasonable is in the statute, as you point out. This would be an entire, you know, entirely reasonable approach that the agency has taken, and as the Seventh Circuit has approved. So we don't, you know, we don't have any objection to that reading, just that we think that there is also this interpretation of collection costs that, you know, is independently supporting the agency's interpretation. My understanding is you've raised both arguments. That's right. But your emphasis is on the collection costs one. That's correct. And I guess I was just wondering why. Your Honor, it's partly because of the history of this regulatory approach and the way that the agency has explained it before, but you're absolutely right that we have raised both, and of course we would welcome a decision from this Court on either basis. So just to be clear, if we disagreed, just hypothetically speaking, if we disagreed with you and believed that there were some collection costs, then we thought that the Secretary was wrong to say that there are no collection costs. We think that there are some. Your fallback argument is consistent with Judge McConnell. The Secretary could still define reasonable collections costs to exclude whatever those costs are. That's right, Your Honor. And I would say that this aspect of our argument ties into the Seventh Circuit's approach. Their emphasis was, look, what Congress was really focused on here were these costly activities, things like civil litigation, things like wage garnishment. By comparison, the activities that are performed in connection with these borrowers cooperate quickly. It's things like sending a form letter. That's a tiny cost. It's negligible in comparison. That's not the kind of thing that Congress would have been focused on. And at a minimum, it was reasonable for the agency to decide that wasn't the sort of thing that Congress was focused on. I do want to address, though, the collection costs piece of this, because it is true that there are no collection costs related to these borrowers. Before you get there, let's stay in this world where we don't agree with you on your main argument, but we're inclined to agree with you on your fallback argument. What would you say to the counter argument that 1078-6's reference to 16 percent is supposed to inform what a reasonable collection cost is in the rehabilitation context? In other words, 1091-A speaks in general terms about reasonable collection costs, and 1078-6 speaks in specific terms about what a reasonable collection cost is in the rehabilitation context. So, Your Honor, 1078-6, and I realize there's a lot of different provisions flying around here, but that 16 percent cap, I think the fact that Congress put in a cap for all rehabilitating borrowers, so that includes borrowers who do not cooperate quickly, who might take many months or many years of collection activities before they finally enter a rehabilitation agreement. I think the fact that Congress wanted to cap even the amount for those borrowers, that's entirely consistent with the Secretary's approach here in saying that for the people who cooperate quickly, who do all the right things, like the those people shouldn't be charged any collection costs. So, go ahead. I was just going to say, I do want to get to whether there are collection costs. I think we'll let you, but just like Judge Wilkins kind of put his cards on the table, last argument I'll put mine on the table here. I'm inclined to go with you on what you just said. I think that your argument would be stronger if the Guarantee Agency shall not charge more than 16 percent. Instead, it speaks in affirmative terms. It says the Guarantee Agency may charge up to 16 percent. That seems a little bit harder for you. Do you agree? Your Honor, I guess I'd point to two other features of that, the text of that provision. One is, of course, in order to defray collection costs language, which I think is helpful for the reasons we've already discussed. I'd also point to the may not exceed language. I think if what Congress wanted to do was to set a cap, may not exceed, those are exactly the words Congress would use. If what Congress was trying to do was to create this standalone entitlement to a fee, a rehabilitation fee that's entirely untethered from collection costs, which is what there's no way they would use that kind of language there. I can't speak for my colleagues, but I'm fine with you moving to the argument that you've been trying to make. Thank you. And that I did not let you. I appreciate that, Your Honor. So on this collection costs point, I think two features of the statute are particularly helpful here. One, as we pointed out, is this distinction that happens again and again throughout the statute between administrative costs and collection costs. One example is 1080B, and just to quote, that refers to the costs of recovery, including administrative costs and collection costs. Congress couldn't have written that if it didn't think of these as two different categories, both of which are costs of recovery. They have to mean two different things. Ascendium hasn't even attempted to provide a definition that would give meaning to both of those terms. And of course, the Secretary has. And I think in thinking about that distinction and giving it meaning, what's helpful is also to think about the structure of the statute. So in this default phase, the unique feature of that phase is that there are these coercive activities, like civil litigation, that doesn't happen anywhere else. It doesn't happen in the lender phase. And so given that context, when Congress used the word collection costs, when it enabled these charges, that would have been a natural shorthand for thinking about the costs that are unique to this default phase, which are these coercive activities. And I think that understanding of the statute is reinforced by common sense. So if we think about what happens with the borrowers who are covered by this rule, they receive a form letter, they enter a standard form agreement, and that's it. Those are all the costs that are associated with them. Most people will say those sound like administrative costs and not collection costs. And Congress at least reinforced that in Section 1082L, which is talking about these routine communications between borrowers, guarantors, and refers to those costs as administrative expenses. So it's common sense, and it's the way that Congress thought about this part of the statute. You point out in your brief that Ascendium is in this case in a way that similarly situated organizations have chosen not to be, and that in fact those similarly situated organizations may not even have opposed the rule that's being challenged. And I see how that helps you a little atmospherically. I wonder though, you know, it's not unusual for regulated parties to seek regulation because they know it will hurt their competitors more than it will hurt them. Is that what's going on here? Your Honor, I don't know what's going on with this industry. Ascendium may know more. I mean, I think what we were getting at with that point is that this is an average cost system. So these are not costs that are tracked on an individual level. They're these, you either get these charges or you don't, and they're usually a couple thousand dollars. And so what Ascendium is asking for here, what its interpretation would do, is that these people who produced no collection costs in the agency's view and tiny costs, regardless of how you categorize them, would have these huge charges. And that's, you know, certainly wasn't the Seventh Circuit's idea of what the statute did. There's nothing in here that suggests that Congress meant to compel that sort of procedure. And I would concede it may not be a fair question, but if it is fair, it's because you started it with what you said in your brief. Fair enough, Your Honor. On this average cost point, just for one minute more, I do want to they certainly haven't challenged it. And so this is just sort of part of the regulatory backdrop, I think, against this. This case needs to be decided. All right. Any other questions? You can either wrap up or we'll give you some time on rebuttal. Okay. Thank you, Your Honor. I'll be back on rebuttal. All right. Thank you. Thank you, Mr. St. John. Good morning. Good morning. Thank you, Your Honor. And may it please the Court. Congress spoke precisely to who guarantors may charge the rehabilitation fee. Every borrower who the guarantor assisted in rehabilitating a defaulted student loan. And Congress also spoke precisely to who must pay reasonable collection costs. Every borrower who defaults on the student loan. The Department's challenge rule says that some of these borrowers who Congress required to pay these fees do not have to pay these fees. And our position is that the Department lacks the statutory authority to substitute its judgment for that of Congress. Now, the Department has reasonable collection costs. But that's not what the challenge rule does. The challenge rule doesn't contain a definition of reasonable collection costs. It doesn't alter the definition of reasonable costs that exist in the regulations. It doesn't change what activities are part of collection costs. It only creates an exception. The plaintext provides that a guarantor may charge the reasonable cost of collection on a defaulted loan unless the borrower undertakes certain activities, in which case the guarantor may not charge any collection costs. This is an exception, not a definition. And Congress already occupied the field as to who should pay these costs. Second, the definition of reasonable collection costs cannot affect the application of the Rehabilitation Fee Statute does not use the term reasonable collection costs. Congress determined directly that an appropriate and reasonable fee would be up to 16 percent of the principal in interest of the loan at the time it was sold. May I ask you about that, though? Why do the collection costs referenced in 1078-6 not have to be reasonable when it can be harmonized with 1091-A, which says they need to be reasonable? They're not in conflict. Why don't we read them together and require the costs in 1078-6 to be reasonable? Well, for a couple of reasons. One is that these fees are, they're different fees. And so 1098 says that, it says 1098 provides that the borrower must pay, the default borrower must pay reasonable collection costs in addition to other charges that are specified in the statute. The Rehabilitation Fee Statute says that the guarantor may charge this particular fee. To defray collection costs, so they're both about collection costs. Congress says that the purpose of the fee is to defray collection costs. But I want to emphasize they can't be the same fee. And part of the reason why that's the case is that the proceeds of those fees, the fees go to different places. So when a guarantor collects a standard default collection fee, the vast majority of that fee, in addition to those collections, is returned to the Department of Education. And that in the case of the Rehabilitation Fee, Congress set up a different system. And the recovery of the Rehabilitation Fee is retained by the guarantor. But a hundred percent of the proceeds from rehabilitation, a hundred percent of the collections of the rehabilitated loan, are given to the Department. The second point I want to make... I'm sorry, can you just clarify, like, why does that have to do with collection costs? Just because they're going to different places doesn't mean they're not both collection costs covered by both statutes. I'm just trying to make the point that there are different fees, and the HGA, even in the standard default collection fee statute, recognizes there could be different charges. But the second point I want to emphasize is that there are different collection activities that lead to the assessment of those charges. Whenever a guarantor enters a loan, the guarantor doesn't engage in those collection activities. Congress called the Rehabilitation Program a repayment incentive. The purpose of rehabilitation is for the guarantor to collect amounts due and owing on a defaulted loan. The guarantor doesn't engage in those collection activities unless there is a rehabilitation. And so Congress recognized that there's going to be... we agree that the language, in order to create collection costs, is Congress's recognition that there is collection activity going on. But it's different collection activity than that that is contemplated when there are other types of agreements in place. And Congress set up a system where the guarantor doesn't get paid collection costs for any of the rehabilitation fee unless it successfully completes rehabilitation with the borrower. And that means you don't assign the costs as you go along on a month-by-month basis. You assign the fee when you are successful. That means going out, soliciting a buyer of this loan, finding the buyer for the loan, getting the proceeds of that loan which would be paid to the U.S. government so that its liability that it incurred when there was a default is paid hopefully fully. No, I understand that there are differences between repayment plans and rehabilitation plans. I just don't understand why that distinction makes a difference when you're defining collection costs and interpreting these two statutes, which refer to collection costs. We're still talking about collection costs in both contexts. The statute still says they need to be reasonable. There's a cap imposed by 1078-6, but I don't see why the differences between the two lead to the conclusion that you are urging, especially since the rule says that a repayment agreement includes a rehabilitation agreement. Why can't the Secretary define it that way if they wish to? I think there are many problems with defining it that way. The first of which is that Congress already made the determination that there would be a different fee for completing a rehabilitative loan, which is a special program. Congress, rather than saying it'll be reasonable collection costs here, actually picked a number. Congress conferred upon the guarantor the direct authority to assess that fee. There's no delegation to the Secretary. That's your interpretation. I don't see why it's not reasonable to interpret this the way the Secretary did, which is that they're all collection costs. This is a cap on the collection costs that can be obtained, and they have to be reasonable. Sure. Well, let me try a different approach here, which is that Congress said that when there is a loan rehabilitation, there would be a guarantor. The guarantor has the authority to charge that. May charge that to defray collection costs. Right. May charge it to which borrowers? To those whose loans are successfully rehabilitated. When will it be charged on the successful completion of rehabilitation? What will the amount be up to 16 percent? What I want to emphasize is, again, the work that the guarantors do with rehabilitation is unique, that relates to rehabilitation, and doesn't occur in other contexts. It is totally reasonable for Congress to make the decision that there should be a fee for helping this borrower out of default and for recovering likely 100 percent of the money that the U.S. taxpayers have paid on this loan. So my position is Congress made that determination. I very much understand your position, and I don't want to belabor this, so I'll just ask you this one final thing. But why can't the Secretary interpret that provision to require that the collection costs have to be reasonable, and that it's not reasonable to assess them in the first 60 days because it doesn't cost them that much to do this? So I had a couple of different responses to that. One is the challenge rule permits the guarantor to charge 16 percent if the rehabilitation agreement is entered on day 61. The guarantor has engaged in no different collection activity between day 60 and day 61. The guarantor doesn't need to engage in coercive collection activity for many, many, many months. The department's challenge rule isn't defining reasonable collection costs here when the guarantor's activity doesn't change. The department is trying to encourage borrowers to enter into these agreements, but Congress determined what were the rules and conditions for these agreements and what fee that they would be charged. So I think, Your Honor, that the question is more hypothetical. Could the department use reasonable collection costs to limit the fee? Now, our position is still no, but our legal position is still no, but our observation of this challenge rule is that that is not what this challenge rule does in any way. Instead, it prohibits them. And I would take a step back and say, well, what are the conditions? Take a step back and say, what are the conditions under the department's logic that this fee that Congress acknowledged could be charged would ever be provided? Is it only in the circumstances where the guarantor is under wage garnishment? But Congress didn't say that the rehabilitation program was only open to those who were involved in wage garnishment. Congress made that program available to every defaulted borrower, and Congress recognized the ability of a fee to every defaulted borrower. And again, I want to emphasize, the guarantor is going to do the same work no matter when a rehabilitation fee is borrowed. And it's not that we've done X amount of collection work before 60 days. It's also that entering rehabilitation, what goes on between the borrower and the guarantor during the next 10 months is also collection activity. It's a repayment of a defaulted loan. Congress called every payment received an amount collected on behalf of the defaulted borrower. It's a special program that only the guarantor can operate, and the guarantor only holds the loan after default. And this brings me to, I think, the next important point of this case, which is Congress determined that default was going to be the trigger to pay collection costs. Now, Congress didn't say you've got to pay collection costs if you miss a payment or two or three or four. Congress defined, statutorily defined default to 270 days. The challenge rule effectively says, no, 270 days plus 60 days, at least 60 days, if certain things happen. That is, I think, a clear conflict with the statute. And Congress didn't just, you know, Congress didn't just define 270 days out of a hat. It used default for a default. To be offered repayment plans, here's how you can avoid default, and told about what the consequences are of default. But the consequences of default are more than just what happens to the borrower. It's on default that there are significant consequences to guarantors and the American taxpayer. It's on default where the guarantor pays the lender's claim, where the U.S. taxpayer, through the Department of Education, pays the guarantor's insurance claim. The guarantors are out a bit. The U.S. taxpayer is out a lot. And Congress determined that the guarantor then has to exercise due diligence to collect on those loans. And it begins to do, to collect on those loans right away. Now, the Seventh Circuit in black recognized that the standard default collection fees enacted because of the losses to the public fixed. Congress made a determination, not only, but Congress made a determination not only that of their default, but also the department recognizes in its rule that these collection charges have incentive effects, right? And in those incentive effects, Congress is saying, if you default, you'll have to pay collection charges. The hope is this will reduce the number of defaults. That argument would also seem to help the government's position here because there's an incentive effect from the rule that they've chosen. They've incentivized the borrower to get right within 60 days after default. Doesn't that speak to the reasonableness of the rule? Well, with all due respect in terms of the incentive effects, Congress is the one that did choose this policy about when collection charges would be applied. And they did choose default. And what's important about the department's policy, though it may be a reasonable one in the abstract, is that it not only conflicts with the plain language of the AGA, but that it also undermines the congressional policy. Because if a borrower does not have to pay collection costs upon default, then whatever incentive effect is created by collection charges isn't going to be felt before default. And yet what Congress is most concerned about is no defaults. Because no defaults means no payment from the U.S. Treasury to guarantors. And from the guarantors' perspective, no payment from the guarantors to the lenders. So I believe that we have to look to what Congress said in Congress's policy, and Congress's policy has to trump the department's policy. Though Congress allowed the Secretary to interpret reasonable collection costs. But Congress did not permit the Secretary to change the subclass of borrowers who were required to pay reasonable collection costs. That's what this case is about. Which is what we believe this case is about because that's the language of the statute which is trumped. Or sorry, that's the language of the statute which the department's challenge undermines by creating this exception. And I do want to emphasize that guarantors do engage in collection activity every time a loan is in default. And that activity begins right away. I see that my time is up here. I have a couple of questions. Just clarify something for me. How do guarantors make money in this business? How do guarantors make money in this business? Well, guarantors have several responsibilities. Some of those responsibilities which are pre-default, there are payments that are made to the guarantors. For example, there's an administrative maintenance fee payment which is made to guarantors that relates to the size of their current status, current repayment status portfolio. The percentage is based on how big your portfolio is. Second, guarantors are paid if they suggest that fee is paid by who? That fee is paid by the Department of Education, by the Secretary. Second, there is a fee that the Secretary provides if the guarantor successfully helps a borrower avoid default. It's called a default aversion fee, but the basic program is the lenders call for help at some point during delinquency. If the guarantors provide that help and the borrower avoids default, then the guarantors receive a fee. Collection costs are another avenue which we've talked about here today. Initially, there were also loan origination fees. When there was a new loan originated, the guarantor would be paid a percentage. However, this program has not had new loans initiated in it for a long time. It's a legacy program. I guess the reason I ask that question is the way I look at the statute is that by saying reasonable costs, the statute could be construed as like sometimes you kind of do rough justice or you kind of have to eat some costs. You may not be able to recoup every penny, and then sometimes there might be someone who is kind of like a free rider, so to speak. I mean, if I invite 10 people to lunch and say I'm going to ask all of you to, I'm going to pay for everything and order everything and have all the food there, and I'll just ask you all to reasonably reimburse me, and let's say an 11th person shows up and they say I've got my bag lunch, but they ate one of the cookies that I had bought for the other 10 people. The other 10 people, be reasonable for them to just kind of subsidize the cost of that cookie and not charge the freeloader for the cost of the cookie. So, I mean, these things happen where it's, and I guess what I'm saying is it doesn't seem to be the case and it doesn't seem to be your argument that because of this construct, I mean, I guess your client is losing some money to the extent that they can't recoup what it believes are some costs under this, but kind of in the scheme of things, you know, your client is recouping money when people avoid the fault and you help them do that successfully and that sort of thing. I'm just trying to figure out why this is to the extent that there's some unfairness here. Why is there some sort of manifest unfairness? And I'd have to again return to the statute, which was there might be many ways to define reasonableness, but you can't pick a way to define reasonableness that changes the classes in the statute. And so in the lunch example, for example, if Congress had said everybody who attends lunch must pay a $20 fee just to play with the hypothetical, then there would be a problem if there was a person there that was there that didn't have to pay the fee because Congress determined that is ultimately would be appropriate. And I want to emphasize that nothing about this rule defines reasonable collection costs. This is a red herring argument by the government because a guarantor's collection activity with respect to a rehabilitated loan, it's rehab related collection activity, does not depend on when the rehabilitation agreement is entered. It's the same in every case. Can I ask that? So if somebody enters a rehabilitation agreement much later, there's not costs accruing as you're trying to persuade them to do something? There are costs that are accruing that relate to reasonable collection costs and standard default fee. But the work with respect to rehabilitation, which is the work that Congress identified. But the collection costs for that borrower are going up because if they enter their rehabilitation loan later in the interim time before they enter it, costs are accruing. That is correct. And those are collection costs. Right. And the rehabilitation fee is for completing rehabilitation. And so those services don't change from one case to another. I don't want to repeat unnecessarily the argument. No, I think I understand your argument. I'm just not sure I agree with it. Sure. I mean, this is Judge Wilkins hypothetical, I think. I think it cuts against you. You tell me why it's wrong. Congress says to someone, you can organize a lunch. You can charge people who charge you more than $20. Now the 11th person comes along and the organizer of the lunch says, I know I can't charge you more than $20. I actually think it's reasonable to charge you a lot less than I've charged everyone else because you brought your own lunch. You only ate a cookie. Isn't that this case? Well, I think that with respect to the rehabilitation fee and rehabilitation statute, Congress said to the guarantor or to the person hosting the lunch that you may charge $20 for the attendance of the lunch. It didn't say you had to. It said you may. You may charge up to $20 or an amount not to exceed. The guarantor in the guarantor's discretion can choose, I'm not going to charge $20 to the person that brought their own lunch. But that hypothetical, there's no delegation, there's no delegation to the department or another entity to come in and say, although Congress told you that you may do this, we're telling you that you may not do this. And that ultimately is what the challenge rule does. Congress didn't leave a gap here for the department to enter into the equation. Also, one thing about that hypothetical that couldn't be a perfect analogy to the rehabilitation context is in each and every case, the work that the guarantor is doing at the lunch is, or in hosting the event, is the same. So there isn't a borrower that comes into rehabilitation in a significantly different space with respect to the event that's being hosted. The guarantor is still going to have to go out, collect the funds and the rehabilitation, find a buyer for the loan, sell the loan, put the proceeds to the government. All right. Thank you. We have your argument. Thank you, Your Honor. So, Mr. Hazel, I think you had maybe, not sure how much was left on the clock, but why don't we give you three minutes? Thank you, Your Honor. Just three quick points. One on the rehabilitation fee argument. Congress recognized and made clear that borrowers who entered those agreements, the rehabilitation fees are supposed to be reasonable and affordable, often $5 a month. Ascendium's argument would mean that at the end of that period, they would get a several thousand dollar additional charge. That just can't be what Congress intended. And that's why every court, every judge, including even the Bible dissent that Ascendium is otherwise relying on, none of them accepted this reading of the rehabilitation fee. Second, on the rule, counsel said that we're making a red herring argument here. No, this rule makes clear that borrowers who cooperate within 60 days cannot be charged collection costs. The explanation for the rule explains that's both for the reasons that the Seventh Circuit gave and because of the department's longstanding position that there are no collection costs in that period. That's something that has been in the regulation since 1992. It's been reaffirmed and reiterated in our briefs in the Bible and in the Black litigation in 2015 Dear Colleague letter. So this is by no means a new argument. And then finally, Judge Wilkins, you asked about funding for guarantors during this period. A guarantor who is working with a borrower who cooperates quickly has two sources of funding aside from collection charges. One is the department earmarks funds for administrative expenses. That's 1087H and those are paid including for the loans related to rehabilitated borrowers. And the second source of funds is that each time those borrowers make a real rehabilitation payment, the guarantor gets to keep money from that payment. So there are, this is not a situation where Ascendium is not making money from those borrowers. They have both of those sources. I'd be happy to answer it. I have one clarification question. Ascendium said that the reasonable collection cost is a separate fee that they do not keep themselves but rather send to the department. And they contrasted that with the rehabilitation fee which comes at the end and which they do get to keep. Is that all factually correct? So Your Honor, my understanding is that for the rehabilitation payments, Ascendium does get to keep those and that would be 1078-6682. And they don't keep the reasonable collection costs? So they do keep the reasonable collection costs. He said they send it to the department. Was he, your opposing, your friend on the other side said that the reasonable collection costs is a separate fee that Ascendium ultimately sends to the department of education. I don't think that's correct, Your Honor. For the group of borrowers that we're talking about, those who enter rehabilitation agreements, the particular provision is 1078-6 and that says when those rehabilitated loans are either assigned to the way, the guarantor is getting to keep a sum that reflects the collection costs. Okay, that's helpful. I'll check it out. Thanks. All right, thank you. We'll take the matter under advisement.
judges: Wilkins, Walker, Pan